UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JIMMY L. GULLY, RAQUEL M. ONTIVEROS, and MAI THURMAN, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | No. 04 C 6849 |
| ARROW FINANCIAL SERVICES, LLC, | ) ) ) | Judge Rebecca R. Pallmeyer |
| Defendant. | ) | |

## MEMORANDUM AND OPINION ORDER

Plaintiffs Jimmy L. Gully, Raquel M. Ontiveros, and Mai Thurman each received a letter from Defendant Arrow Financial Services LLC ("Arrow") offering to settle their outstanding credit card debts to Capital One Services ("Capital One") for less than the full amounts due if Arrow received the specified settlement payment by a certain date. Plaintiffs allege on behalf of a class of debtors that these debt collection letters are misleading in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, because they convey the false impression that the settlement offers are only available for a limited period of time. Arrow denies that the letters violate the Act and seeks judgment on the pleadings pursuant to FED. R. CIV. P. 12(c). For the reasons set forth here, the motion is denied.

## BACKGROUND

Gully is a resident of Gary, Indiana who owed a $1,167.17 debt to Capital One. (SAC ¶ 3; Collection Letter of 5/26/04, Ex. A to SAC.)[1] Ontiveros is a resident of Chicago, Illinois who owed Capital One a debt of $503.19. (*Id.* ¶ 4; Collection Letter of 9/14/04, Ex. B to SAC.) Thurman, also of Chicago, Illinois, owed Capital One a debt of $3,351.43. (*Id.* ¶ 5; Collection Letter of 1/14/04, Ex. C to SAC.) Plaintiffs all incurred their individual Capital One credit card debts "for personal,

---

[1] Plaintiffs' Revised Second Amended Complaint - Class Action is cited as "SAC ¶ ___."

family or household purposes." (Id. ¶¶ 11, 17, 23.) At some point Capital One referred Plaintiffs' debts to Arrow, which is in the business of buying bad debts and which acted as a collection agency in this case. (Id. ¶ 7.) Arrow and Capital One agreed that Arrow had the authority to settle any of Capital One's accounts at a discount according to the following formula:

| Account Balance | Days Since Charge-Off[2] | | | |
|---|---|---|---|---|
| | 0-90 | 91-180 | 181-730 | >730 |
| $0 - $1,500 | 70% | 70% | 50% | 50% |
| $1,501 - $3,000 | 70% | 50% | 50% | 50% |
| > $3,000 | 70% | 50% | 40% | 40% |

(Id. ¶ 31.)

### A. The Collection Letters

On May 26, 2004, Ray Thompson, an Account Representative for Arrow, sent Gully a form collection letter seeking to recover his defaulted debt to Capital One. (Id. ¶¶ 10-12.) The letter stated:

> At this time our client is willing to settle your past due account for 75% of the full balance and accept this amount as settlement of the referenced account. The settlement amount must be made in one payment and received by our office on or before June 7, 2004.
>
> * * * *
>
> Should you have any questions please feel free to contact me at 800-807-3490 ext. 2467.

(Id. ¶ 13, 15; Collection Letter of 5/26/04, Ex. A to SAC.)

On September 14, 2004, Arrow Account Representative James Smith sent Ontiveros a similar form collection letter seeking to recover her defaulted debt to Capital One. Aside from a different payment due date – September 27, 2004 – this letter was essentially identical to the one sent to Gully. (Id. ¶¶ 16-19, 21; Collection Letter of 9/14/04, Ex. B to SAC.) Thurman, too,

---

[2] Charge-offs are write-offs taken on uncollectible credit card receivables. See In re Sears, Roebuck and Co. Sec. Litig., 291 F. Supp. 2d 722, 724 n.2 (N.D. Ill. 2003).

2

received a nearly identical letter from Arrow Account Representative George Perry on January 15, 2004. In Thurman's letter, Arrow offered to settle her past due account for 40% of the full balance if it received payment by February 12, 2004. (*Id.* ¶¶ 22-25, 27; Collection Letter of 1/15/04, Ex. C to SAC.)

### B. Plaintiffs' Lawsuit

On October 25, 2004, Gully filed a class action complaint against Arrow, alleging that the May 26, 2004 collection letter was false or misleading in violation of § 1692e of the FDCPA. Thurman filed a similar lawsuit against Arrow on January 7, 2005. On January 18, 2005, Gully requested that Thurman's case, which was pending before Judge Filip, be reassigned to this court and consolidated with Gully's lawsuit. This court granted Gully's motion on January 26, 2005.

On February 16, 2005, Gully amended the complaint to add Ontiveros as a Plaintiff. In this Second Amended Complaint currently before the court, Plaintiffs allege that the collection letters they received are misleading in violation of the FDCPA because they state that Arrow and Capital One are willing, "[a]t this time," to settle the claims for a certain percentage of the total debt, and set a deadline for receipt of the reduced payment. These statements, Plaintiffs allege, falsely suggest that the offers are only available for a brief period.[3] (SAC ¶¶ 14, 15, 20, 21, 26, 27.) In the case of Gully and Ontiveros, Arrow conveyed the false impression that it would accept 75% of

---

[3] Section 1692e of the FDCPA provides:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> * * * *
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. §§ 1692e and 1692e(10).

3

their debts as full payment, but only for a limited time; in fact, Arrow and/or Capital One will "take 75% of a Capital One-owned debt at any time, and will also settle for less than 75%." (*Id.* ¶ 32.) With respect to Thurman, Arrow similarly conveyed the false impression that the offer to accept 40% of the debt was available only for a limited time; in reality, "if a debt in excess of $3,000 reaches the point on the above schedule at which a 40% settlement is authorized by Capital One [i.e., 181 days or more have passed since the charge-off], Arrow is authorized to and will in fact take 40% of a Capital One debt at any time." (*Id.* ¶¶ 46, 47.)

Arrow argues that the collection letters are accurate and cannot be deemed misleading to the unsophisticated consumer. It thus moves for judgment on the pleadings.

## DISCUSSION

A motion for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c) is evaluated using the same standard applicable to Rule 12(b)(6) motions to dismiss for failure to state a claim. *Guise v. BWM Mortgage, LLC*, 377 F.3d 795, 798 (7th Cir. 2004). Under that standard, judgment on the pleadings should be granted "only if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief. In evaluating the motion, [the court] accept[s] all well-pleaded allegations in the complaint as true, drawing all reasonable inferences in favor of the plaintiff." *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 704 (7th Cir. 2004) (quoting *Midwest Gas Servs., Inc. v. Indiana Gas Co.*, 317 F.3d 703, 709 (7th Cir. 2003)).

### A. The Case Law

In the SAC, Plaintiffs cite several cases in support of their theory that Arrow's collection letters are misleading. In *Goswami v. American Collections Enterprise, Inc.*, 377 F.3d 488 (5th Cir. 2004), Capital One authorized the defendant debt collector to provide debt collection services and to settle any Capital One accounts at a discount according to a schedule very similar to the one at

4

issue in this case. *Id.* at 491. *See supra* p. 2. Pursuant to that authority, the defendant sent the plaintiff, who was one of Capital One's delinquent debtors, a form collection letter stating, in part:

> Effective immediately, and only during the next thirty days, will our client agree to settle your outstanding balance due with a thirty percent (30%) discount off your above balance owed. This settlement must be in one payment and must be received in our office no later than 30 business days from the date of this letter unless you contact our office to make other arrangements.

*Id.* at 491-92. The plaintiff filed suit against the defendant arguing, among other things, that the letter was deceptive in violation of the FDCPA because it led debtors to falsely believe that the settlement offered was the one and only chance to settle the debt. *Id.* at 494. The district court granted summary judgment to the defendant, but the Fifth Circuit reversed. *Id.* at 492, 496.

The Court of Appeals agreed with the plaintiff that the defendant's offer to settle her debt at a discount "only during the next thirty days" was false because Capital One set forth a schedule that actually allowed discounted settlements throughout the collection process. In the court's view, the statement "makes it appear that Capital One's offer of a 30% discount was a one-time, take-it-or-leave-it offer that would expire in thirty days. The obvious purpose of the statement was to push [the plaintiff] to make a rapid payment to take advantage of the purported limited time offer." *Id.* at 495. The court agreed that collection agencies must be able to offer settlements, but stated that such a "policy consideration does not remove collection agencies' obligation under the FDCPA to deal in a nondeceitful manner." *Id.* at 496.

Plaintiffs also rely on several cases from this district, including *Pleasant v. Risk Mgmt. Alternatives, Inc.*, No. 02 C 6886, 2003 WL 164227 (N.D. Ill. Jan. 23, 2003) (Coar, J.) and *Jones v. Risk Mgmt. Alternatives, Inc.*, No. 02 C 9392, 2003 WL 21654365 (N.D. Ill. July 11, 2003) (Aspen, J.) In both cases, the defendant debt collector, Risk Management Alternatives, sent letters to the plaintiff debtors offering a "one time settlement" of their debts. In *Pleasant*, the defendant agreed to accept 50% of the total amount due from plaintiff Debra Pleasant, and in *Jones*, the defendant agreed to accept 75% of the total amount due from plaintiff Debra Jones. *Pleasant*,

5

2003 WL 164227, at *1; *Jones*, 2003 WL 21654365, at *1. The collection letters in both cases also stated that "[i]f settlement amount is not received by the date indicated above, the offer will be null and void and the entire balance outstanding will be due." *Id.* The *Pleasant* court denied the defendant's motion to dismiss the FDCPA complaint relying, without elaboration, on plaintiff's allegation that "the 'one time' settlement offer was not, in fact, a 'one time' offer at all." *Id.* The *Jones* court, in turn, granted class certification on the plaintiff's FDCPA claim, noting the plaintiff's allegations that "the offers were neither 'one time' offers nor offers of limited duration" and that "the defendant is 'virtually always ready to settle debts for 75% of the balance or less.'" *Jones*, 2003 WL 21654365, at *1.

Plaintiffs next cite to *Jackson v. National Action Financial Servs.*, No. 04 C 1805 (N.D. Ill. Nov. 10, 2004) (Docket No. 18) (Castillo, J.) ("*Jackson v. National*"), in which the defendant debt collector attempted to collect a debt the plaintiff owed to Capital One. *Id.* at 1. The defendant sent the plaintiff a letter offering to settle his debt for 75% of the total amount due, and stating, in relevant part:

> In order to take advantage of this offer, your payment must be received in our office on or before [December 3, 2003] . . . . In the event that you are unable to make the settlement payment within the time frame indicated, call our office prior to the deadline date. It may be possible to extend the deadline under certain circumstances.

*Id.* Several weeks later, the defendant sent the plaintiff a second letter, this time offering to settle his debt for 50% of the total amount due. *Id.* at 2. The plaintiff filed suit claiming that the letters were false, deceptive, or misleading because the defendant was authorized to give him a 75% discount on his debt at any time. *Id.*

In denying the defendant's motion to dismiss, the court noted that the letters were similar to the ones at issue in *Pleasant* and *Jones*. The defendant attempted to distinguish those cases, arguing first that it qualified its offer by stating that the deadline may be extended "under certain circumstances." *Id.* at 4. The court noted that the Fifth Circuit rejected just such an argument in

6

Goswami, and held that "the qualifying language is itself deceptive because a deadline extension requires an actual deadline." Id.

The Jackson v. National court also considered King v. Arrow Financial Servs., LLC, No. CIV.A. 02-0867, 2003 WL 21780973 (E.D. Pa. July 31, 2003), a case involving the Defendant before this court. In King, Arrow argued, as it does here, that the letters it sent plaintiff King were distinguishable from those in Pleasant and Jones because they did not use the words "one time" offer. Jackson v. National, at 4. The letter in King stated, "At this time our client is willing to settle your past due account for 40% of the full balance and accept this amount as settlement of the referenced account. The settlement amount must be made in one payment and received by our office on or before April 3, 2002." 2003 WL 21780973, at *1. The court granted Arrow's motion for partial judgment on the pleadings, finding that the letter was not a "one time" offer. The court explained:

> While Ms. King takes the position that Arrow would have accepted a settlement after the stated deadline, this allegation, which must be accepted for present purposes, does not show that the letter violates the FDCPA. The inclusion of a deadline for acceptance of the settlement is merely a term of the settlement offer, and the least sophisticated consumer would interpret it as such.

Id. at *3.

The Jackson v. National court found King unpersuasive. The letter at issue in King "set[] forth the terms of the settlement offer in a straightforward fashion." Jackson v. National, at 4 (quoting King, 2003 WL 21780973, at *3). Conversely, the letters in Jackson v. National, the court stated, "cannot be described as straightforward because they imposed two different settlement deadlines – neither of which were actual deadlines." Id. The court concluded that the plaintiff had stated a valid cause of action because the defendant's letters "could have created a 'false sense of urgency' in an unsophisticated consumer." Id. at 5 (quoting King, 2003 WL 21780973, at *3).

Plaintiffs finally cite to Jackson v. Midland Credit Mgmt. Inc., No. 04 C 5056 (N.D. Ill. Oct. 12, 2004) (Holderman, J.) (Minute Order, Docket No. 8) ("Jackson v. Midland"), in which Midland

7

Credit Management, Inc. and MRC Receivables Corporation ("MCM/MRC") purchased an outstanding debt owed by the plaintiff to an unidentified third party. MCM/MRC sent the plaintiff three letters offering a "settlement opportunity" and a "positive and flexible option to resolve" his debt for 50% of the balance due. The letters stated that if MCM/MRC received the specified payment by a certain date, "we will consider the Account Balance paid in full." The plaintiff responded with an FDCPA lawsuit, which MCM/MRC sought to dismiss. The court denied the motion, finding that "[a]n unsophisticated consumer debtor could read the letters and conclude that MCM/M[R]C was making a one time only offer and was unwilling to settle the debt at a later date." In light of the fact that MCM/MRC sent the plaintiff three settlement letters, "the court, drawing all inferences in [the plaintiff's] favor, . . . infers that MCM/MRC never intended to make a one time offer and therefore [the plaintiff] can bring a claim that the letters were 'false, deceptive or misleading' under the FDCPA." In reaching this conclusion, the court declined to follow *King*, explaining that the court is not free to "make its own evaluation of what it believes to be the purposes of the language in the letters." In the court's view, "an unsophisticated consumer debtor could read the letters' requirement of payment by a set date to be a one time only offer."

Arrow argues that Plaintiffs' cases are all distinguishable and urges the court instead to follow *King*, discussed above; *Sarder v. Academy Collection Serv., Inc.*, No. CV 02-2486 NG VVP, 2005 WL 615831 (E.D.N.Y. Mar. 3, 2005); and *Kahen-Kashani v. National Action Financial Servs., Inc.*, No. 03 CV 828, 2004 WL 1040384 (W.D.N.Y. Apr. 12, 2004). The plaintiff in *Sarder* owed Citibank an approximately $9,000 debt that was referred to the defendant for collection. In that regard, the defendant sent the plaintiff a letter stating, in relevant part:

> This is to advise you that your delinquent account has been transferred to our office for collection by CITIBANK (SOUTH DAKOTA) N.A.(S). They are willing to accept * * * $6,447.42 * * * as settlement . . . . This settlement offer valid until 03-02-02.

2005 WL 615831, at *1. The letter also asked the plaintiff to check either a box indicating that payment was enclosed, or a box indicating that "I cannot settle now, but call me at the below listed

8

number to discuss my account." *Id*. Several weeks later, the plaintiff received a second letter from the defendant offering to settle her debt for $6,192.38. The plaintiff did not respond to either letter but filed suit against the defendant alleging violations of the FDCPA. *Id*. The plaintiff claimed that the least sophisticated consumer would read the first letter as a final offer, which was deceptive in light of the second letter offering to settle for a lesser amount. *Id*. at *2.

The court disagreed, finding "no indication in the letter that the agency will not accept less than $6,447.42 before March 2, 2002, nor is there any indication that it will not settle after March 2, 2002 for a lesser amount." *Id*. at *3. The court noted that the letter offered the plaintiff the alternative of indicating that she could not settle for the offered amount and that the agency should call her to discuss her account. In the court's view, a contrary conclusion "would have a number of undesirable results for consumers and courts alike," including deterring agencies from offering a lower settlement amount and, thus, "eliminat[ing] settlement possibilities." *Id*. The court therefore granted the defendant's motion for judgment on the pleadings.

In *Kahen-Kashani*, the defendant debt collector sent the plaintiff debtor two letters seeking to recover on a debt owed to Discover Financial Services. 2004 WL 1040384, at *1. Although the court did not provide quotations from the letters, the opinion makes clear that both letters were identical except that the second one offered to settle for a lesser amount than the first and set a different response date. *Id*. at *2. The plaintiff filed suit against the defendant, alleging that the letters created false deadlines and a false sense of urgency for him to respond. *Id*. at *4. The magistrate judge recommended summary judgment in favor of the defendant, finding that "a reasonable reading of the collection letters would be that the customer was offered a settlement offer (at figures proposed by the creditor or the debt collection) that was available for a limited time." *Id*. In the magistrate judge's view, "[n]othing in either letter made either a one time offer that would never come again if plaintiff did not act (either to accept it or to contact defendant) or precluded defendant from contacting plaintiff again about his debt." *Id*. The magistrate judge

9

found it significant that the letters indicated that the defendant had the authority to extend the offer deadlines "UNDER CERTAIN CIRCUMSTANCES." *Id.* at *1, 4.

The district court adopted the magistrate judge's report and recommendation in its entirety. *Kahen-Kashani v. National Action Financial Servs., Inc.*, No. 03-CV-828A, 2004 WL 2126707 (W.D.N.Y. Sept. 21, 2004). In doing so, the court distinguished *Goswami*, noting that unlike the letter in that case, "the letters sent by the defendant did not communicate that this was a one-time, take-it-or-leave-it offer. In fact they explicitly communicated that it may be possible to extend the offer under certain circumstances. *Id.* at *1.

## B. Analysis

Arrow argues that *Goswami*, *Pleasant*, and *Jones* are all distinguishable because they involved letters that expressly made one time settlement offers. In *Goswami*, the letter stated that settlement was available "only during the next thirty days"; in *Pleasant* and *Jones*, the letters offered a "one time settlement." Arrow's letters in this case, conversely, state only that settlement for a specified amount is available "[a]t this time." (Def. Mem., at 11-12; Def. Reply, at 3.)[4] Plaintiffs insist that the phrase "at this time" is the equivalent of "only" in that it "gives the impression that the settlement offer is only available for the specified period [when] [i]n fact, Arrow will take this payment at any time." (Pl. Resp., at 5.)[5] The *King* court rejected a similar argument, but Plaintiffs urge that "it is from a Circuit which, unlike the Seventh Circuit, permits or requires district courts to decide whether collection letters are misleading by looking at them." (*Id.* at 12.)

Arrow responds by citing *Taylor v. Cavalry Investment, LLC*, 365 F.3d 572 (7th Cir. 2004), in which the Seventh Circuit stated:

---

[4] Arrow's Motion for Judgment on the Pleadings is cited as "Def. Mem., at __." Arrow's Reply in Support of Motion for Judgment on the Pleadings is cited as "Def. Reply, at __."

[5] Plaintiffs' Response to Defendant's Motion for Judgment on the Pleadings is cited as "Pl. Resp., at __."

10

> If it is apparent from a reading of the letter that not even "a significant fraction of the population" would be misled by it – if as in *White v. Goodman*, 200 F.3d 1016, 1020 (7th Cir. 2000), the interpretation attested to by the plaintiff is a "fantastic conjecture" – the court should reject it without requiring evidence beyond the letter itself.

*Id.* at 574-75. *Cf. Chuway v. National Action Financial Servs., Inc.*, 362 F.3d 944, 948 (7th Cir. 2004) ("If it is apparent just from reading the letter that it is unclear . . . and the plaintiff testifies credibly that she was indeed confused and that . . . she is representative of the type of people who received that or a similar letter, no further evidence is necessary to create a triable issue.") The court described the district judge's decision to dismiss the plaintiff's complaint on the pleadings as a "complication" because it left the dunning letter as the only evidence. *Id.* at 576. The court nevertheless affirmed the dismissal based on representations from the plaintiff's counsel that the only additional evidence he intended to introduce was an affidavit from the plaintiff confirming that he had been confused by the defendant's letter. As the court explained, such evidence constituted "a form of proof as unavailing in this case as in the other." *Id.*

The court is not persuaded to follow *King* based on the Seventh Circuit's ruling in *Taylor*. Plaintiffs' assertion that the "[a]t this time" language implies that no settlement offer will be forthcoming in the future is not such "fantastic conjecture" that "not even 'a significant fraction of the population' would be misled by it." *Taylor*, 365 F.3d at 574-75. To the contrary, when viewed together with the specific deadline for submitting payment, Arrow's offer of settlement "[a]t this time," while literally true, arguably suggests that it was a "one time" offer only. *See, e.g., Sledge v. Sands*, 182 F.R.D. 255, 260 (N.D. Ill. 1998) (citing *Gammon v. GC Servs. Ltd. Partnership*, 27 F.3d 1254, 1258 (7th Cir. 1994)) ("A literally true collection letter . . . can still convey a misleading impression.") In addition, this case, unlike *Taylor*, does not involve any suggestion by Plaintiffs' counsel that the only further evidence they intend to present on this issue are affidavits from Plaintiffs themselves affirming their confusion.

11

Arrow also attempts to distinguish *Jackson v. National* and *Jackson v. Midland*, noting that the plaintiffs in both of those cases received more than one letter. (Def. Reply, at 6.) The *Jackson v. National* court found that the defendant's two letters "cannot be described as straightforward because they imposed two different settlement deadlines – neither of which were actual deadlines." (*Jackson v. National*, Docket No. 18, at 4). The *Jackson v. Midland* court similarly found that "[i]n light of the second and third letters sent by MCM/MRC, the court, drawing all inferences in Jackson's favor, . . . infers that MCM/MRC never intended to make a one time offer . . ." (*Jackson v. Midland* Minute Order, Docket No. 8.) None of the Plaintiffs in this case, however, claims to have received more than one offer to settle their accounts. (Def. Reply, at 6.)

The court declines to grant judgment on the pleadings merely due to the happenstance that Arrow never sent Plaintiffs second or third collection letters. Plaintiffs allege that Arrow was at all times willing to settle their accounts at a 75% discount, and that Thurman could have settled her account at a 40% discount at any time after she received the January 15, 2004 letter from Arrow. To the extent the payment deadlines stated in the letters were not in fact actual deadlines, the letters arguably created a false sense of urgency in an unsophisticated consumer such that they are misleading under the FDCPA. *See, e.g., Jackson v. National*, at 5 (quoting *King*, 2003 WL 21780973, at *3). The court recognizes that Plaintiffs may not be able to demonstrate any actual damages resulting from Arrow's efforts to encourage them to promptly pay their valid debts, but the FDCPA contemplates a case of this nature in any event. *See* 15 U.S.C. § 1692k(a)(2)(A) (authorizing statutory damages); *Keele v. Wexler*, 149 F.3d 589, 593 (7th Cir. 1998) ("The FDCPA does not require proof of actual damages as a precursor to the recovery of statutory damages.")

The court recognizes, further, that two district courts from New York have rejected FDCPA claims based on similar letters. The court is not, however, bound by either decision, and finds them both distinguishable in any event. In *Sarder*, the collection letter did not contain the "at this time" language but simply offered to settle the plaintiff's account for a certain sum paid by a specified

12

date. 2005 WL 615831, at *1. In *Kahen-Kashani*, a case decided on summary judgment as opposed to judgment on the pleadings, there is similarly no indication that the letters contained the "at this time" language. In addition, the letters specifically stated that the debt collector could extend the offer deadlines "under certain circumstances," leading the court to conclude that they did not express one-time, take-it-or-leave-it offers. 2004 WL 2126707, at *1, 4. No such qualifying language appears in Arrow's letters here and, even if it did, at least one court in this jurisdiction has found similar language to be misleading where the debt collector was in fact willing to accept a discounted payment at any time. See *Jackson v. National*, at 4 ("the qualifying language is itself deceptive because a deadline extension requires an actual deadline.")

Viewing the allegations in a light most favorable to Plaintiffs, the court cannot say that they will be unable to prove any set of facts supporting their claim for relief under the FDCPA. Arrow's motion for judgment on the pleadings is therefore denied.

## CONCLUSION

For the reasons stated above, Arrow's motion for judgment on the pleadings (Docket No. 24) is denied.

ENTER:

Dated: June 8, 2005

REBECCA R. PALLMEYER
United States District Judge